**In re MUSKOGEE ENVIRONMENTAL CONSERVATION COMPANY, INC., an Oklahoma corporation, Muskogee Environmental Conservation Company, a partnership, and William F. Scriminger, Debtors.**

Bankruptcy Nos. 96–04292–M, 96–04293–M, 96–04522–M.

United States Bankruptcy Court, N.D. Oklahoma.

June 2, 1998.

Sam Bratton, II, Richard Gable, Tulsa, OK, for Debtors.

J. Phillip Adamson, James Frasier, Tulsa, OK, for Defendants.

**ORDER GRANTING MOTION TO QUASH**

TERRENCE L. MICHAEL, Bankruptcy Judge.

THIS MATTER comes before the Court for consideration of the Motion and Brief to Quash Subpoena Duces Tecum and Deposition or in the Alternative, Application for Protective Order (the "Motion") filed by the Debtors and their Special Counsel, Richard W. Gable ("Gable"). An Opposition to the Motion was filed by the First Maintenance and Support Trust (the "Trust") and MKP Rocky, Ltd. ("Rocky"). A hearing was held on the Motion on April 22, 1998. Thereafter, the Court established a schedule for submission of additional evidence in support of and in opposition to the Motion.[1] All such evidence was submitted as of May 4, 1998. For the reasons set forth below, the Motion is granted.

**Procedural History**

The Chapter 11 bankruptcy cases of Muskogee Environmental Conservation Company, Inc., an Oklahoma corporation, Muskogee Environmental Conservation Company, a partnership, and William F. Scriminger, an individual, (hereafter collectively referred to as "Debtors") were filed on October 21, 1996. The cases have been administratively consolidated and have continued as Chapter 11 cases since their filing. Prior to the filing of the Chapter 11 cases, Debtors were involved in extensive litigation with the Trust and Rocky.[2] The litigation between these parties has continued unabated in the bankruptcy cases. In addition, the pre-petition litigation between these parties has continued through the appellate process in the Oklahoma state courts.

Debtors have proposed a joint plan of reorganization. The Disclosure Statement sub-

---

1. In addition to the evidence received by the Court, certain exhibits were offered but not received. Counsel for the Trust and Rocky also made a written offer of proof with respect to the issue of the alleged waiver of the attorney-client privilege by Debtors. Those documents have been included as part of the record, although none were reviewed or considered by the Court in making its decision.

2. The litigation between Debtors, the Trust and Rocky involves the right of the Trust and Rocky

to a portion of the operating profits of one of the debtors, Muskogee Environmental Conservation Company, Inc. The Trust and Rocky prevailed at the trial court level, only to have the decision reversed by the Oklahoma Court of Civil Appeals. The matter is now pending before the Oklahoma Supreme Court on a petition for *certiorari*. Further explanation of the dispute between these parties is not required for an understanding of the Court's decision today, and would unnecessarily lengthen this Order.

mitted in connection with said plan has been approved. *Docket No.* 220. The following motions are currently pending before the Court:

a. Confirmation of Debtors' Amended Plan of Reorganization (the "Plan");

b. Objections to the Plan filed by the Trust and Rocky;

c. The Amended Motion to Dismiss Chapter 11 case of William F. Scriminger filed by the Trust and Rocky;

d. The Amended Motion to Dismiss the Chapter 11 case of Muskogee Environmental Conservation Company, Inc. filed by the Trust and Rocky;

e. The Amended Motion to Dismiss Chapter 11 case of Muskogee Environmental Conservation Company filed by the Trust and Rocky; and

f. The Amended Motions to Appoint a Trustee and Examiner filed in the cases of William F. Scriminger, Muskogee Environmental Conservation Company, Inc. and Muskogee Environmental Conservation Company filed by the Trust and Rocky.

(hereafter collectively referred to as the "Pending Matters"). On March 4, 1998, this Court issued its scheduling order with respect to the Pending Matters. *Docket No.* 243. Under the terms of the Scheduling Order, discovery was to be completed no later than April 28, 1998, and trial of all of the Pending Matters was scheduled to commence May 21, 1998.[3]

On March 27, 1998, the Trust[4] issued a subpoena (the "Subpoena") to Gable, commanding him to appear and give testimony at the offices of counsel for the Trust on April 16, 1998. In addition to appearing for the purpose of providing testimony, the subpoena commanded Gable to produce "all files and documents relating to the above debtors that relate to acts and activities prior to March 31, 1994." The Trust also issued a notice to take Gable's deposition for the same time and place. The Motion was filed April 15, 1998. That same day, the Court issued its order setting the Motion for hearing, and tolling any requirement of compliance with the Subpoena pending the Court's ruling on the Motion.

At the April 22, 1998, hearing, Mr. Gable and Mr. Frasier both indicated that discussions had taken place between them and that the scope of information sought under the Subpoena had been limited. During the hearing, the Court made a direct inquiry of counsel for Rocky and the Trust as to the information sought through issuance of the Subpoena. The Court and counsel for the Trust engaged in the following discussion:

THE COURT: What exactly is it that you want?

MR. FRASIER: I want proof—excuse me.

THE COURT: There are apparently letters floating back and forth that I don't have. What I have on the record is a subpoena that says produce, as I read it, every piece of paper from March 31, 1994 and prior. What is it that you want?

MR. FRASIER: Sir, I want communications between Mr. Gable and Mr. Scriminger.

THE COURT: For what time period?

MR. FRASIER: Prior to 31 March, '94. And I don't have a date, but I would suggest to Your Honor that it would be probably the first of '91 when the underlining problems started to arise. Mr. Adamson has a suggestion perhaps on the earlier date. I would want the converse of that, Mr. Scriminger's communications to Mr. Gable. That would be—and in both those instances, Your Honor, it would be letters, any kind of memoranda relative to verbal communication. I would then want the oral testimony of Mr. Gable as to his recollection and remembrances of those documents and things beyond those documents but in that period of time. Communications from Mr. Scriminger to persons

---

3. The trial date has been continued to be reset by later order of the Court.

4. Although the Subpoena and the Notice of Deposition appear to be in the name of the Trust alone, the Court assumes that the discovery was sought for the benefit of Rocky as well as the Trust.

other than counsel relative to the subject matter of the litigation that preceded 31 March, 1994 and the underlying Ricketts contract. I'll call it Rickett's contract. It was Mr. Ricketts with whom he was litigating in Muskogee.

THE COURT: Anything else?

MR. FRASIER: If I could confer with Mr. Adamson?

THE COURT: You may do so.

MR. FRASIER: Thank you. Your Honor, as stated by me with the exception of the date, Mr. Adamson would suggest 31 December, 1996 because that's when the first discussion we believe occurred relative to the litigation involving Rickett's.

THE COURT: December—(Interrupted)

MR. FRASIER: And the contractual rights.

THE COURT: 1996?

MR. FRASIER: '86. I'm sorry.

*Transcript of Hearing Held April 22, 1998,* p. 15, line 23 through p. 17, line 14 (hereafter *"Transcript"*). Rocky and the Trust seek to obtain all written correspondence between Scriminger and Gable for the time period between December 31, 1986, and March 31, 1994, all memoranda of any oral conversations between Gable and Scriminger during this time period, and to depose Gable on the topic of his representation of Scriminger during that time period. Debtors and Gable respond by stating that Rocky and the Trust are not entitled to the discovery which they seek.

### Discussion

■ The issue before the Court is whether MKP and Rocky should be allowed to take the deposition and obtain the work files of Gable, one of Debtors' counsel. In their Opposition, MKP and Rocky state the following four reasons this discovery should be allowed, and the Motion overruled:

1. When the Debtors came into bankruptcy, they laid bare their business life and subjected it to the examinations sought herein.

2. Although Gable has moved to quash the deposition and production of documents, he has admitted that many of the documents are not subject to any privilege. Additionally, there are things to be asked of Gable that are not subject to a privilege.

3. Gable has not provided a privilege log and without it it is impossible to tell what document might otherwise be or not be privileged.

4. Waivers of the privilege have occurred by the Debtors by virtue of statements which the Debtors have made in open court, in depositions, or to the parties herein.

5. Even if there is a privilege herein, it should be ordered waived for the benefit of the creditors.

*Opposition* at pp. 2–3. The Court finds each of these positions to be without merit.

### Deposition of Mr. Gable

■ The United States Court of Appeals for the Tenth Circuit has ruled that the taking of the deposition of opposing counsel should only be allowed where the party seeking to take the deposition has established: (1) the only means of obtaining information is through deposition of opposing counsel; (2) the information sought is relevant and non-privileged; and (3) information sought is crucial to the preparation of the case. *Boughton v. Cotter Corp.,* 65 F.3d 823, 829 (10th Cir.1995), *citing Shelton v. American Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir.1986). This position is consistent with, and perhaps codified by, Rule 26 of the Federal Rules of Civil Procedure. *See* F.R.C.P. 26(b)(3) (West 1998). Applying these factors to the information sought by Rocky and the Trust, the Court finds that taking Gable's depositions is the only means of obtaining his mental impressions. Accordingly, it would appear that the first test has been met. In order to meet the second prong of the test, the party seeking the information must establish that the information sought is relevant and nonprivileged.

### 1. Relevance

■ This Court takes a broad reading of the term "relevant" as it applies to pre-trial discovery. "Relevance is broadly construed at the discovery stage of litigation and a request for discovery should be considered

relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Biliske v. American Live Stock Insurance Co.*, 73 F.R.D. 124, 125 (W.D.Okla.1977) (citation omitted). However, the reading of this Court, although broad, is not without its limits. The issues presently before the Court relate to confirmation of Debtors' plan, dismissal of the case and/or appointment of a trustee. It appears to the Court that much if not all of the information sought relates to the underlying dispute between the parties. By definition, it relates to a time frame *years* prior to the filing of this bankruptcy case.[5] Setting aside the issue of privilege for the moment, this argument dovetails into the third prong of the *Boughton* analysis; i.e., whether the information sought is crucial to the preparation of the case. This issue was not addressed by counsel for Rocky and the Trusts, either in an oral argument before the Court or in their moving papers. The Court has difficulty in finding that the information sought is relevant to the issues raised by the Pending Matters. The Court has even more difficulty finding that the information sought is "crucial" to the preparation of Rocky and the Trust for the upcoming hearings on the Pending Matters.

### 2. Attorney–Client Privilege

 Under the Federal Rules of Evidence, issues of privilege in a civil action are resolved by looking to applicable state law. Federal Rule of Evidence 501 (West 1998).

The rules regarding attorney-client privilege in the state of Oklahoma have to a large degree been codified. *See* Okla. Stat. tit. 12, § 2502 *et seq.* (West 1988 & Supp.1998). Under these statutes, with limited exceptions, communications between a client and his or her attorney are privileged.

> B. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional services to the client:
>
> 1. Between himself or his representative and his attorney or his attorney's representative.

Okla. Stat. tit. 12, § 2502(B)(1) (West 1988 & Supp.1998). For purposes of this statute

> A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.

Okla. Stat. tit. 12, § 2502(A)(5) (West 1988 & Supp.1998). Rocky and the Trust argue that: (1) by disclosing to Adamson (in the course of Adamson's representation of Scriminger) certain statements made by Gable to Scriminger, Scriminger has waived the privilege; and (2) on the basis of certain answers given in a deposition, Scriminger has waived the privilege.

---

**5.** In argument on April 22, 1998, counsel for Rocky made the following statement:

> While that was going on, we, of course, filed our claim here in bankruptcy. The defense as I understand it to our claim in bankruptcy, sir, is that among other things, we overreached, we misrepresented, we took advantage of Mr. Scriminger, Sr., William Scriminger. That the agreement for compensation evidenced by the contingency fee contracts and the subsequent assignments were improperly secured. He did this during what he called his blue funk. Those are his words. His blue funk period of time. It was a period of time during which, I guess, [he] was under some sort of stress or mental problem that apparently confused him or led him to exercise something other than good judgment. . . .
> Additionally, once it [the attorney/client privilege] is waived, I think that we are entitled to

discovery for discovery purposes to see what would be—what we might find on the direct issue of the blue funk defense or our bad faith or over-reaching on claim and whatever else it my [sic] lead to that would help us defend such an assertion.
*Transcript*, p. 13, lines 5 through 17, p. 14, lines 13 through 18. Under the terms of the proposed plan, the validity of the claims of Rocky and the Trust would be resolved post-confirmation through a claims adjudication process. Therefore, the major dispute between these two parties is not presently before the Court. This Court has already issued an order in this case refusing to compel Rocky and the Trust to produce tax returns and other financial records on the basis that their relevance, if any, relates to the issue of claim validity, and not to any of the issues raised by the matters currently pending before the Court.

The Court has difficulty in finding that the information sought is nonprivileged or that the attorney-client privilege has been waived. In support of their position that the information at issue is nonprivileged, Rocky and the Trust have offered several pages of an April 2, 1997, deposition of William F. Scriminger, one of the Debtors herein, and managing partner and chief operating officer of the other two Debtors. The Court has reviewed the deposition testimony offered in great detail.[6] The Court finds that, each time the issue of attorney-client privilege between Mr. Gable and Mr. Scriminger was broached, an objection to the question on the basis of privilege was raised. The Court finds that no waiver of the attorney-client privilege occurred.

The interesting twist in this case is that one of the counsel for Rocky and the Trust (Mr. Adamson) is former counsel to Mr. Scriminger. It was Adamson who obtained the proprietary interests which are the subject of this litigation.[7] Mr. Adamson has placed himself in the interesting position of being lead counsel directly adverse to his former client. As such, he argues that, since his relationship with Mr. Scriminger is now at issue, the attorney-client privilege between **them** is waived.[8] Rocky and the Trust take the position that such a waiver extends to communications between Mr. Gable, former and present counsel for Debtors and Mr. Scriminger.[9] The Court disagrees. It is certainly possible that Mr. Scriminger may have disclosed to Mr. Adamson certain details of his conversation with Mr. Gable in the scope of Mr. Adamson's representation of Mr. Scriminger. Such disclosures were made in the course of the attorney-client relationship between Mr. Scriminger and Mr. Adamson. The applicable Oklahoma statutes expressly state that communications "[a]mong attorneys and their representatives representing the same client" are subject to the attorney-client privilege. Okla. Stat. tit. 12, § 2502(B)(5) (West 1988 & Supp.1998). Similarly, any disclosures made by Scriminger to Adamson during Adamson's representation of Scriminger remain privileged, unless otherwise waived. Disclosures of privileged communications made in the course of the attorney-client relationship do not operate as a waiver of the privilege.

6. At certain points in the deposition transcript, the parties and Mr. Scriminger refer to various exhibits. The exhibits were not included in the transcripts provided to the Court, rendering the Court unable to consider them.

7. The interests at issue were then assigned by Adamson to Rocky.

8. The apparent basis for the argument of Rocky and the Trust can be found in the following colloquy between counsel during Mr. Scriminger' deposition:

> Q. (By Mr. Adamson) So you had conferred with him [Gable] about these issues previously?
> Mr. Gable: Object to the question, calling for disclosure of confidential privilege.
> Mr. Adamson: He's already indicated that he spoke with you.
> Mr. Gable: Same objection.
> Mr. Adamson: You may answer Mr. Scriminger.
> Mr. Gable: No. Instruct the witness not to answer.
> Mr. Adamson: Certify that question as well.
> Mr. Frasier: Dick, I'd ask that you reconsider it because it's very obvious from Exhibit 7 that the gentleman has waived his attorney-client privilege, if he ever had one. And I'd ask that you reconsider.
> Mr. Gable: I don't see the waiver, Jim.

> Mr. Frasier: The waiver is the publication of Exhibit 11 when he wrote it.
> Mr. Gable: Well it really wasn't a publication. Keep in mind, this was a confidential communication to his also attorney at that time.
> Mr. Frasier: But he brings the relationship between himself and Mr. Adamson to this court at this time and, by that, waives any confidential communication.
> Mr. Gable: I don't think it waives the confidential communication with other attorneys. With respect to communications with Mr. Adamson, I would agree with you.
> Mr. Frasier: Very well. We'll certify the question.

*Creditor's Exhibit 1*, p. 186, line 11 through p. 187, line 15.

9. The following argument is found at pages 7 and 8 of the Opposition:

> Additionally, Scriminger on a number of occasions talked with Adamson, a predecessor in interest to one of these creditors, regarding conversations he had with Gable and even showed Adamson documents that Gable's office prepared, such as a memo as to Scriminger's fiduciary duties to Ricketts.

What is not disclosed in the Opposition is that those communications were made to Adamson in the scope of his representation of Scriminger. Adamson testified to this fact at the April 22, 1998, hearing.

The Trust and Rocky also argue that any privilege between Gable and Scriminger has been waived as a matter of Oklahoma law. The Trust and Rocky rely upon the following section of the Oklahoma statutes:

D. There is no privilege under this rule:

. . .

3. As to a communication relevant to an issue of breach of duty by the attorney to his client or by the client to his attorney; . . .

Okla. Stat. tit. 12, § 2502(D)(3) (West 1988 & Supp.1998). The Trust and Rocky argue that, since Scriminger's relationship with Adamson is now in dispute, and because Scriminger disclosed certain of his communications with Gable to Adamson, *all* communications between Gable and Scriminger during the requested time period (including those previously not disclosed by Scriminger to Adamson) no longer enjoy the protection of the attorney-client privilege. The Court disagrees. Under this section, it may well be true that the attorney-client privilege has been waived as to any communications between Adamson and Scriminger, including those in which Scriminger informed Adamson of the content of Scriminger's communication with Gable. However, it does not follow that *all* of Scriminger's communications with one of his attorneys (Gable) over a period in excess of eight years are now discoverable. Mr. Adamson knows what he knows (and remembers); the bell cannot be unrung. To the extent that communications exist between Adamson and Scriminger which relate to an alleged breach of Adamson's duty to Scriminger, they may be the proper topic of discovery at the time the issue of the claims of Rocky and the Trust are litigated. It does not follow that all of Scriminger's communications with Gable are drawn in to that dispute, and the privilege with respect to those communications waived.

■ Finally, the Trust and Rocky argue, without authority, that the mere filing of bankruptcy by the Debtors somehow operates as a waiver of the attorney-client privilege. They argue that as creditors in this case, their "need to know" is so great that it extinguishes the law of privilege. The case which they cite, *Commodity Futures Trading Commission v. Weintraub,* 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985) (hereafter *Weintraub* ), stands for no such proposition. The issue decided by the Supreme Court in *Weintraub* was whether the right to assert or waive the attorney-client privilege passed from the directors of the corporation to the bankruptcy trustee upon the filing of the bankruptcy petition. *See Weintraub,* 471 U.S. at 345, 105 S.Ct. at 1989. The Supreme Court ruled that the right to assert or waive the privilege did pass to the trustee. Implicit in this ruling is a finding that the attorney-client privilege is alive and well in bankruptcy cases, and does not cease to exist at the moment the petition is filed.

■ The Court believes that requests to depose opposing counsel are subject to great scrutiny and are to be sparingly granted. This Court adopts the following analysis of the United States Court of Appeals for the Eighth Circuit:

Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standard of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent.

*Shelton v. American Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir.1986). The prophesy of *Shelton* with respect to delays and the raising of collateral issues has been fulfilled in this adversary proceeding.

*3. Privilege Log*

■ Rocky and the Trust argue that this Court should require Gable to submit a "privilege log" of those documents he claims are subject to the attorney-client privilege so that the validity of the privilege may be assessed. In support of their position, Rocky and the Trust rely upon *Vaughn v. Rosen,*

484 F.2d 820 (D.C.Cir.1973) and Local Rule 26.1F of the United States District Court for the Northern District of Oklahoma. The Court declines to do so for several reasons. First of all, N.D. LR 26.1F is expressly inapplicable in bankruptcy cases. *See* N.D. LR 1.1D. In addition, the purpose of requiring a privilege log is to allow the parties to fully litigate, and the Court to properly determine, the validity of the privilege asserted. *See Vaughn,* 484 F.2d at 827. In the present case, the scope of discovery as narrowed seeks all written correspondence and memoranda of communications between Scriminger and Gable for the time period between December 31, 1986, and March 31, 1994. There can be little doubt that communications between attorney and client are the proper subject of the attorney-client privilege. The documents sought are not relevant to the disputes presently before the Court (confirmation of a plan, dismissal of the bankruptcy cases, and appointment of a trustee or an examiner in each case). Finally, this Court believes that the request is too broad to require the preparation of a privilege log. Rocky and the Trust seek production of *all* documentation of communications between Gable and Scriminger for a period in excess of eight years. Given the Court's findings as to relevance of the information sought and the lack of waiver of the attorney-client privilege, there is no need to put counsel for the Debtors to the task of preparing a privilege log covering documents and memoranda generated over a period of eight years.

*Attorney Work Product*

Under the terms of the subpoena as issued, Rocky and the Trust also seek to obtain certain of the work files of Gable, an attorney who has been appointed as co-counsel for the Debtors in these bankruptcy cases. In their written opposition to the Motion to Quash, Rocky and the Trust focus on the issue of the attorney-client privilege; no mention is made of the production of work product. In addition, the dialogue between the Court and counsel for Rocky and the Trust (*see* pp. 528–529 *supra*) indicates that this information is no longer requested, and that the information sought has been limited to communications between Gable and Scriminger.[10] Accordingly, the Court finds that Rocky and the Trust have withdrawn their request for the work product of Gable, and the Motion to Quash is sustained on that basis.

### Conclusion

IT IS HEREBY ORDERED that the Motion to Quash Subpoena be, and the same hereby is, sustained.

---

**10.** During the first day of hearing on the Motion, Gable offered a privilege and work-product log to be reviewed by the court *in camera.* Counsel for Rocky and the Trust objected to the Court's *in camera* review of these documents. The Court reserved ruling on the objection and has not reviewed the documents. On the second day of hearing, counsel for both parties engaged in the following exchange: .

> MR. GABLE: At the beginning of these proceedings, I delivered you two lists, work product claims. I think the necessity of producing those have now evaporated since the purpose is only to get communications between me and Mr. Scriminger that occurred prior to March 31, 1994. So, with that, rather than burden the clerk with having to keep those confidential and burden Your Honor with that problem, I thought I might just withdraw it.
>
> THE COURT: Any objection, Mr. Frasier?
>
> MR. FRASIER: Yes, I would like for them remain there because of the state of the record.

> THE COURT: Very well. We will maintain them unless my deputy is giving me a look like that might not be such a great idea. Just a moment. We'll consider in chambers the best way to handle that because they are not identified marked as an exhibit or offered, so I don't know how they would be part of the record. And my inkling is to return them. I trust Mr. Gable will not destroy them in case they ever become an issue in the future. So, with that, are we done with the motion to quash?
>
> MR. FRASIER: I believe we are, sir.
>
> THE COURT: Mr. Gable.
>
> MR. GABLE: I believe so, Your Honor.

*Transcript,* p. 62, line 4 through p. 63, line 3. Based upon the silence of counsel for Rocky and the Trust, the Court finds that the demand for many of the documents sought has been withdrawn, and the need for a privilege log eliminated.